UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
JUNIOR RICHARDS,

        Plaintiff,

-against-

NORTH SHORE LONG ISLAND
JEWISH HEALTH SYSTEM and
NICHOLAS F. CAMERANO,

        Defendants.
----------------------------------------------------X

MEMORANDUM AND ORDER

CV 10-4544

(Wexler, J.)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D N.Y

★    DEC 06 2011    ★

LONG ISLAND OFFICE

APPEARANCES:

    VALERIE A. HAWKINS, ESQ.
    Attorney for Plaintiff
    77 Saint Pauls Road North
    Hempstead, New York 11550

    GARFUNKEL WILD, P.C.
    BY: LEONARD M. ROSENBERG, ESQ.
    Attorneys for Defendants
    111 Great Neck Road Suite 503
    Great Neck, New York 11021

WEXLER, District Judge

    Plaintiff Junior Richards ("Plaintiff") commenced this action alleging racial discrimination in employment. Named as Defendants are Plaintiff's former employer, the North Shore Long Island Jewish Health System (the "Hospital"), and Nicholas Camerano, Plaintiff's former supervisor ("Camerano").[1] Plaintiff alleges claims pursuant to 42 U.S.C. §1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII").

---

[1]    Prior to the termination of his employment, Plaintiff worked at Southside Hospital, which is a part of the North Shore Long Island Jewish Health System.

1

Defendants move to dismiss the Title VII action on the ground that the action was not timely commenced. Dismissal of the Section 1981 action is sought on the grounds of collateral estoppel. Finally dismissal of the claim against Defendant Camerano is sought on the ground of improper service of process. For the reasons set forth below, the motion is granted with respect to the Title VII claim and denied with respect to the Section 1981 claim.

## BACKGROUND

### I. The Parties and the Allegations of the Complaint

The facts set forth below are drawn from Plaintiff's complaint as well as the administrative record that is properly before the court.

Plaintiff was employed in the engineering department of the Hospital from 1990 until his termination on October 27, 2007. The facts surrounding his termination occurred on October 10, 2007. It is undisputed that on that date, a malfunctioning monitor in the intensive care unit was brought to Plaintiff's attention. It appears that the wrong size fuse, wrapped in aluminum foil was used to correct the problem. The Hospital takes the position that it was Plaintiff's decision to use the foil-wrapped fuse, which was a fire hazard. It states that Plaintiff was terminated for creating this hazard, and that its decision was in no way motivated by Plaintiff's race. Plaintiff's complaint, on the other hand, states that the decision to use the foil wrapped fuse was not his, but was that of his supervisor, who is White. Plaintiff contends that he was unfairly blamed and terminated, on account of his race.

### II. Administrative Proceedings

Plaintiff filed separate charges of race discrimination with the New York State Division of Human Rights ("NYSDHR" or the "Division") against both his union and the Hospital. Both

charges were filed on July 15, 2008. While the NYSDHR found no probable cause to believe that either the Union or the Hospital discriminated against Plaintiff, the court here focuses only on the claim lodged against the Hospital. With respect to that claim, Plaintiff was advised by the Division of its receipt of his complaint in a letter dated July 23, 2008. That letter, addressed to Plaintiff's Rockville Centre, New York address, advised Plaintiff of his duty to inform the Division of any change of address or telephone number. The Hospital thereafter responded to Plaintiff's administrative complaint.

The documentary record of proceedings before the Division show that the investigation it conducted consisted of review of documents, as well as separate telephone conferences held with Plaintiff, the Hospital and two witnesses. Although a joint conference was scheduled, no such conference ever too place. Instead, the investigation was conducted by way of separately conducted interviews, and review of separately submitted documents. The Hospital was represented by counsel throughout the proceedings, and submitted a detailed document setting forth its position.[2] Plaintiff dealt directly with the Division. As to telephone contact with Plaintiff, the Division records show that he was contacted on July 23, 2008, and that he expressed his desire to proceed with his discrimination claim against both the Hospital and his union. While the Division set December 15, 2009, as the date for a conference with both parties, a notation to the file indicates that this conference did not take place, as neither party appeared.

Thereafter, the investigation proceeded, with the Division taking evidence separately

---

[2] Although it does not appear that Plaintiff was ever represented by counsel before the Division, a January 26, 2010, entry in the Division's record notes that Plaintiff indicated that he was no longer represented by counsel. The Court assumes, for the purpose of this motion that Plaintiff was not represented by counsel at any point during the proceedings before the Division.

3

from the parties. The Hospital's written response to Plaintiff's charge of discrimination was received by the Division on December 28, 2009. Plaintiff sent a letter dated January 14, 2010 to the Division, asking that the December 15, 2009 conference (attended by neither party) be rescheduled. The record thereafter reflects that the Division called Plaintiff on January 5, 12, 14 and 18. It does not appear that any contact with Plaintiff was made on any of those occasions. It is clear that the December 15, 2009 conference was never rescheduled, and that a conference with all parties present was never held.

On January 19, 2010, the Division's noted indicate that it conducted a telephone interview with Harry Brown, the Hospital's Manager of Engineering. Brown is noted to have stated that Plaintiff missed days from work. He also stated that Plaintiff was terminated for his part in creating the unsafe fire condition with respect to the replacement of a fuse, as discussed above. The Division's notes also indicate that a telephone interview was conducted with Elizabeth Napoli, a Hospital representative. Napoli set forth the Hospital's position regarding the termination of Plaintiff, refuting specifically his statement that he was fired for something done by a White employee. In addition to setting forth the facts of the incident involving the fuse, Napoli pointed to the Hospital's knowledge of Plaintiff's race when he was hired, and his later promotion.

On January 26, 2010, the Division held a telephone conference with Plaintiff. The notes of that conference indicate Plaintiff's belief that he was terminated on account of his race. It also indicated that Plaintiff told the Division his version of the fuse replacement incident. Specifically, Plaintiff stated that it was a White security guard, and not Plaintiff, who made the decision to wrap the fuse in foil and place it back in the monitor. Plaintiff stated that he was

4

blamed for the incident because of his race, and was thereafter terminated. Plaintiff also told the Division that he was excluded from a department photograph on account of his race. In addition to telephone conferences with the parties and witnesses as set forth above, the Division reviewed data submitted through the statement of Camerano. That data indicated that of the twelve people working in the same Hospital department as Plaintiff, two were Black. Camerano stated that another worker, who was White, was terminated on grounds similar to those that led to Plaintiff's termination.

On January 28, 2010, the Division issued its "Determination and Order After Investigation" (the "January 28 Decision"). That decision held that, after investigation, the Division determined that there was no probable cause to believe that the Hospital had engaged in the discriminatory practice charged. Specifically, the January 28 Decision held that Plaintiff committed an act of gross negligence that created an unsafe condition which provided a legitimate, non-discriminatory reason for his termination. The decision further held that the evidence submitted by the Hospital showed that similar employment action was taken against a White employee, disproving Plaintiff's claim of disparate treatment based upon his race. The Decision noted that in addition to filing his claim under New York State Law, Plaintiff also claimed a Title VII violation. As to that claim, Plaintiff was advised of his right to request a review of the Decision by the Equal Employment Opportunity Commission ("EEOC"), within 15 days of receipt of the Decision.

Plaintiff did not request review of the January 28 Decision by the EEOC. Instead, in a letter dated June 3, 2010, Plaintiff's counsel herein wrote to the EEOC noting her representation of Plaintiff and referencing the January 28 Decision. Counsel's letter requested that the EEOC

issue a Notice of Right to Sue. The requested "Right to Sue" letter was issued by the EEOC, and mailed to Plaintiff at his Rockville Centre address, with a copy to his counsel, on June 16, 2010. The Right to Sue letter indicated that the EEOC adopted the findings of the Division and advised Plaintiff of the fact that he could file a Title VII lawsuit, but that such lawsuit must be filed within 90 days of receipt of the notice, or his right to sue would be lost. This action, filed on October 5, 2011 followed.

III. The Motion

Defendants move to dismiss the Title VII claim on the ground that it was filed outside of the 90 day period referred to above and is therefore untimely. Dismissal of the Section 1981 claim is sought on the ground that the Division's determination as to a lack of probable cause to believe that discrimination occurred collaterally estops Plaintiff from pursuing his civil rights claim here. The claim against Defendant Camerano is sought on the ground that he was not served with process at his actual place of business. After setting forth applicable legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I. Motion to Dismiss Title VII Claim

A. Time to File Complaint.

When the EEOC dismisses a charge and decides not to pursue a civil action, it notifies the claimant of the statutory requirement that he or she has ninety days in which to bring a civil action against the respondent named in the charge. 42 U.S.C. § 2000e-5(f)(1). Generally, failure to file a complaint within the statutory time period results in a dismissal of the action. Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990); Broich v. Incorporated Village of

Southampton, 2011 WL 284484 *10 (E.D.N.Y. 2011); Wong v. Health First Inc., 2005 WL 1676705 *3 (S.D.N.Y. 2005). With respect to mailing, there is a presumption that mailed documents are received three days after the date sent. Broich, 2011 WL 284484 *11 n.7.

The ninety day time period is not a jurisdictional requirement for commencement of an action in the district court. Instead, the time limit is in the nature of a statute of limitations which may be tolled in certain situations. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982); Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir. 1989). he Supreme Court has explored the doctrine of equitable tolling and has set forth examples of when the Title VII ninety day period may be tolled. See Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151 (1984). These include situations where: (1) the claimant did not receive proper notice; (2) a motion for counsel is pending; (3) a court misleads the plaintiff into believing that he or she has fulfilled all of the necessary requirements, or (4) the defendant is guilty of misconduct which lulls the plaintiff to inaction. Baldwin, 466 U.S. 147, 151 (1984). It has also been recognized that equitable tolling may be appropriate if an EEOC official gives a plaintiff erroneous or misleading information. See Johnson, 731 F.2d at 146.

Equitable tolling will not apply unless a plaintiff has acted diligently to protect his rights. Baldwin County, 466 U.S. at 151. In the absence of diligence, tolling will not be invoked. South v. Saab Cars USA, Inc., 28 F.3d 9, 12 (2d Cir. 1994). Moreover, equitable tolling is not to be invoked because of some "vague sympathy for particular litigants." Baldwin County, 466 U.S. at 152. Finally, while an absence of prejudice to defendant is to be considered, it does not constitute an independent basis upon which to equitably toll the ninety day period. Id.

Where a plaintiff fails to raise appropriate equitable considerations, the ninety day period

should not be tolled and plaintiff's action should be dismissed. Rasmassen v. Sigma Corporation of America, 27 F. Supp. 2d 388, 392 (E.D.N.Y. 1998). Even where the plaintiff has missed the filing period by as little as one day, courts have dismissed complaints where plaintiff could not show any of the aforementioned equitable considerations. See, e.g., Moscowitz v. Brown, 850 F. Supp. 1185, 1192 (S.D.N.Y. 1994).

    B.    The Title VII Claim Must Be Dismissed As Untimely

The documents before the court are clear. The Right to Sue letter was issued and mailed to Plaintiff and his counsel on June 16, 2011. This action was not commenced until 111 days later, on October 5, 2011. Thus, there is no question but that this action was commenced after expiration of the 90 day period.

In an effort to avoid application of the limitations period, Plaintiff argues that he moved, and therefore did not receive the Right to Sue letter. While failure to receive such notice may allow tolling under certain circumstances, tolling will be applied only, as noted, if the plaintiff has been diligent in protecting his rights. Here, if it is true that Plaintiff moved, diligence would require that he comply with the Division's request, communicated to Plaintiff upon the filing of his charge of discrimination, that he keep the agency abreast of any change in address. Here, despite direct contact with the Division after the filing of his charge of discrimination, Plaintiff did no such thing. In view of the foregoing facts, the doctrine of equitable tolling will not be applied. Accordingly, the Title VII claim is dismissed as untimely.

II.    Motion to Dismiss Section 1981 Claim

    A.    Collateral Estoppel: Legal Principles

The Supreme Court has held, in cases that do not arise under Title VII, that traditional

8

rules of preclusion apply to the unreviewed findings of a state agency, that are made after a full and fair opportunity to litigate. University of Tennessee v. Elliot, 478 U.S. 788, 799 (1986). Thus, findings of a state administrative agency are entitled to the same preclusive effect as would be affording in the State Court. DeCintio v. Westchester County Medical Center, 821 F.2d 111, 116 (2d Cir. 1987); Jeter v. New York City Dept. of Educ., 549 F. Supp.2d 295, 304-05 (E.D.N.Y. 2008). It is the burden of the party seeking preclusion to show an identity of issues litigated, and that of the party opposing preclusion to show the absence of a full and fair opportunity to litigate. See Ryan v. New York Telephone Co., 478 N.Y.S.2d 823, 825-27 (1984).

The precise question of the preclusive effect to be afforded an unreviewed agency determination of "no probable cause" was discussed by the Second Circuit in Kosakow v. New Rochelle Radiology Associates, P.C., 274 F.3d 706 (2d Cir. 2001). There, the court noted generally, that preclusion bars subsequent litigation where the claimant sought judicial review of the agency finding, and/or where the claimant made clear that all facts were properly presented to the administrative tribunal. Kosakow, 274 F.3d at 730. Where these two factors are not present, a more detailed analysis of the full and fair opportunity to litigate at the administrative level is required. See Kosakow, 274 F.3d at 734. As to that question, the Second Circuit notes that New York courts consider the "realities of litigation," "including the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." Id. at 374, quoting, Schwartz v. Public Administrator, 298 N.Y.S.2d 955, 961 (1969). Consideration of these factors in Kosakow led the Second Circuit to reverse the District Court's dismissal of plaintiff's claim

on the ground of collateral estoppel.

B. The Section 1981 Is Not Barred By Collateral Estoppel

Similarities between the facts in Kosakow, and those presented here lead the court to reach the same conclusion. Here, as in Kosakow, Plaintiff appeared pro se, at the agency level. While this factor is not dispositive, it does militate against a finding of preclusion. Most important to this court's determination that Plaintiff's claim is not barred is the fact that no hearing, or even a formal meeting of both sides was ever conducted. Thus, Plaintiff had no opportunity to confront and cross-examine Hospital witnesses. While the agency had the authority to hold such a meeting, and one was scheduled, it was never held. The Agency record indicates only, without explanation, that neither side appeared. Moreover, despite Plaintiff's request to re-schedule the meeting, it never took place. The Agency's "no probable cause" determination was based solely on ex parte submissions, made without the benefit of discovery or cross-examination. While the Agency certainly has the authority to make determinations as its schedule allows, and according to its assessment of a particular claim, this court is not necessarily bound by its determinations. Where, as here, however, the Agency's conclusion is reached without affording the claimant a full and fair opportunity to litigate, that finding is not entitled to collateral estoppel effect. Accord Jeter, 549 F. Supp.2d at 304-05.

III. Motion to Dismiss Defendant Camerano

Camerano seeks dismissal on the ground that he was not properly served at his place of business. The motion to dismiss Camerano is denied at this time. While it appears that Camerano was not properly served, that is a factual determination that cannot be made at this time.

## CONCLUSION

For the foregoing reasons Defendant's motion to dismiss is granted only with respect to the Title VII claim. The motion is otherwise denied. The Clerk of the Court is directed to terminate the motion to dismiss and the parties are directed to proceed with discovery.

SO ORDERED

*s/* Leonard D. Wexler

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
December 6, 2011